UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY LEE MURRY,<br><br>           Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 1:14-cv-01349 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JERRY LEE MURRY AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Plaintiff Jerry Lee Murry asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in relying upon the testimony of the vocational expert to determine he is able to perform work existing in significant numbers in the national economy. Because the ALJ failed to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, the administrative decision is **REMANDED** for further proceedings.

## BACKGROUND[1]

On December 28, 2010, Plaintiff filed his applications for benefits, in which he alleged disability beginning July 3, 1984. (AR at 13) The Social Security Administration denied the

---

[1] Citations to the Administrative Record are designated as "AR," followed by the appropriate the page number.

1

applications at the initial level on June 24, 2011, and upon reconsideration on September 26, 2011. (*Id.*) Plaintiff requested a hearing, and testified before an ALJ on May 1, 2013. (*Id.* at 13, 289) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on June 10, 2013. (*Id.* at 13-21) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on September 24, 2014. (*Id.* at 5-7) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.     Medical Opinions**

Dr. Lavanya Bobba reviewed Plaintiff's medical record on March 2, 2011.  (AR at 221-24) She noted Plaintiff reported he had pain in his back, right shoulder, neck, and feet.  (*Id.* at 221) Plaintiff said he did "not do much of anything" except take medication, stay in bed, and "hurt all day." (*Id.*)  Plaintiff reported he was "run over by a truck with a trailer in 1984," which hurt his back and left leg.  (*Id.* at 222)  She also noted Plaintiff first reported hip pain in 2008 and neck pain in 2010.  (*Id.*) Dr. Bobba opined that there was insufficient evidence related to Plaintiff's impairments from 1984 to 2009.  (*Id.* at 223)

Plaintiff had a psychological evaluation with Dr. J.K. Zhang on March 17, 2011.  (AR at 225) Dr. John Zhang noted Plaintiff's complaints included "hypertension, high cholesterol, lower back pain, shoulder and neck spasms, and right foot problems."  (*Id.* at 226)  Plaintiff reported he was depressed, but "denie[d] a history of psychiatric hospitalization" and was "not taking any psychotropic medication."  (*Id.* at 226-27)  He found Plaintiff exhibited "a full range of affect" and "[h]is attention and concentration seem[ed] to be intact."  (*Id.* at 227)  Dr. Zhang observed: "The primary impairment in this case appears to be medical in nature and should be deferred to the assessment of his physicians.

Psychiatrically, he demonstrates some level of depression, but his symptoms seem to be tolerable." (*Id.*) According to Dr. Zhang, he "did not find any other significant mental impairment" and there were no "signs of a thought disorder." (*Id.*)

Dr. Emanuel Dozier conducted a comprehensive internal medicine evaluation on May 18, 2011. (AR at 229) Plaintiff told Dr. Dozier he had pain in his low back, shoulders, neck, and feet. (*Id.*) He explained his "shoulder and neck pain are combined and he experience[d] pain and tenderness that radiate[d] from the neck out to the tip of the shoulder." (*Id.*) Plaintiff described the pain as "8/10" and said the medication gave "poor relief." (*Id.* at 229-30) Dr. Dozier observed that Plaintiff s "no signs of pain, ataxia or shortness of breath." (*Id.* at 230) Dr. Dozier determined Plaintiff had "mild local tenderness in the trapezius muscle bilaterally," as well as "painful active and passive range of motion of the left hip with local tenderness over the joint." (*Id.* at 231, 233) Plaintiff also complained of pain while extending his shoulder joints. (*Id.* at 232) Dr. Dozier concluded Plaintiff was able to sit for six hours in an eight-hour day, walk and stand four hours in an eight-hour day, and should use "[a] cane for long distances and uneven terrain." (*Id.* at 233) He opined Plaintiff was able to occasionally do postural activities including "bending, stooping, crouching, pushing and pulling." (*Id.*) In addition, Dr. Dozier concluded Plaintiff was able to do "[o]ccasional reaching, handling, fingering and feeling….due to the joint findings." (*Id.*)

Dr. Bobba again reviewed the record on June 22, 2011. (AR at 246-51) Dr. Bobba believed the limitations imposed by Dr. Dozier were "too restrictive" because there was no history of ongoing treatment and Plaintiff did not report taking any pain medication. (*Id.* at 250) Further, she noted Dr. Dozier recommended that Plaintiff use a cane for walking long distances, though he had a normal gait. (*Id.*) Dr. Bobba concluded Plaintiff was able to perform light work with postural limitations and "above shoulder limits." (*Id.*) Specifically, Dr. Bobba believed Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour day, and sit about six hours in an eight-hour workday. (*Id.* at 247) Dr. Bobba opined also that Plaintiff was able to occasionally reach in all directions, including overhead. (*Id.* at 248)

Similarly, Dr. De La Rosa reviewed the record on September 26, 2011, and opined the need for a cane was "not supported as no weakness, balance problems and… objective exam notes no

limitations." (AR at 255) Therefore, Dr. De La Rosa affirmed the decision that Plaintiff is able to perform light work. (*Id.*)

**B.      Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on April 1, 2013. (AR at 289) Plaintiff reported he graduated high school and had vocational training in welding and asbestos removal. (*Id.* at 290-91) He reported that he last worked as an auditor at an IKEA distribution center in 2007. (*Id.* at 291, 293) He explained the job required him to check orders, and lift and carry boxes that weighed an average of "30, 40 pounds." (*Id.* at 291-92) Plaintiff said he stopped working because the job "got too hard." (*Id.* at 294-95) He said that he got "slower and slower" walking on the concrete and he was "harassed about speeding up." (*Id.* at 295) He believed he was unable to work because he "hurt more" and felt weaker. (*Id.*) Plaintiff reported he had more pain in his shoulder, backs, and left hip, for which he was taking prescription pain medication. (*Id.* at 295-97)

Vocational expert Robert Raschke also testified at the hearing. The VE characterized Plaintiff's work at IKEA as "a warehouse worker," which was defined as "medium exertion" in the *Dictionary of Occupational Titles.*[2] (AR at 306) In addition, the VE concluded that "based upon the written record," Plaintiff also performed the work at the medium exertional level. (*Id.*)

The ALJ asked the VE to consider a hypothetical individual "of the claimant's age, education and experience." (AR at 306) The ALJ said:

> [The individual] can occasionally lift 20 pounds, frequently 10, stand and walk with normal breaks, six hours out of eight. Sit with normal breaks six out of eight. Push and pull is unlimited other than for lift and carry. Climbing ramps and stairs frequent. Climbing ladders, ropes and scaffolds occasional. Balance, frequent. Stoop, occasional; kneel frequent. Crouch and crawl occasional. Occasional reaching, with the exception of overhead reaching which is limited. Otherwise no manipulative limitations, no visual limitations, and simple, repetitive tasks.

(*Id.* at 306-07) The VE opined a person with these limitations and abilities would be precluded from Plaintiff's past relevant work "on exertional grounds alone." (*Id.* at 307) However, the VE testified there was "a bit of work in the production sector, task oriented work that [he] believe[d] could be

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

performed." (*Id.*) For example, the VE identified jobs with light exertional requirements, including: small products assembler, DOT 739.687-030; packer, DOT 753.687-038; collators, DOT 653.687-010. (*Id.* at 307-08) In addition, the VE said "security work" that was "considered to be entry level or semi-skilled," such as a gate guard, *DOT* 372.667-030, "would be really good with . . . these types of restrictions." (*Id.* at 308)

Next, the ALJ asked the VE to consider an individual with the same limitations previously set forth, but with the addition of "no work from heights." (AR at 309) Further, the hypothetical person needed to have a "sit stand option," and the ability to stand and walk was reduced to "four out of eight" hours. (*Id.*) The VE testified the jobs he identified "tend to offer sit-stand options," with the exception of the security position. (*Id.*) The VE explained that "entry level light production worker or checker jobs … are performed from … high work stations that usually have a bench associated with them so the person can generally sit or stand at will." (*Id.*) According to the VE, the number of jobs available would be impacted, but "at least 50 percent of those jobs or better would still be on the table" for the production positions. (*Id.*)

The ALJ then asked the VE whether the information provided "was consistent with the DOT." (AR at 310) In response, the VE stated: "Any time we step into the issue of sit stand option I'm testifying based upon my – approximately 40 years actual field experience, working with people with disabilities. The *Dictionary of Occupational Titles* does not address sit stand options." (*Id.*)

After the ALJ concluded her questioning, Plaintiff's counsel asked the VE if the jobs identified could still be performed if the individual "was limited to occasional reaching, handling, fingering and feeling." (AR at 310) The VE opined such a limitation "would eliminate all of those production oriented jobs, the packer, the production worker and the inspector jobs." (*Id.*) According to the VE, each of those jobs "require frequent use of the hands." (*Id.*) The VE believed the gate guard position "would still be on the table," because it required "only occasional use of the hands." (*Id.* at 311)

**C.      The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff had engaged in substantial gainful activity after the alleged onset date, during 1997, 1998, 1999, 2000, and 2005. (AR at 15) However, the ALJ also determined there were "continuous 12-month periods during which the claimant

did not engage in substantial gainful activity. (*Id.*) Second, the ALJ found Plaintiff has the following severe impairments: "degenerative joint disease of the right should and left hip and degenerative disc disease of the lumbar spine." (*Id.* at 16) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 17) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift 20 pounds occasionally, 10 pounds frequently; stand and walk with normal breaks 4 hours out of 8 hours; sit for 6 hours out of 8 hours; push and pull unlimited other than shown for lift and carry; climb ramps and stairs frequently; climb ladders, ropes and scaffolds occasionally; balance frequently; stoop, crouch, and crawl occasionally; kneel frequently; reach occasionally; limited overhead reaching; no work from heights; sit or stand as needed; and work is limited to simple, routine and repetitive tasks.

(*Id.*) With this residual functional capacity, the ALJ found Plaintiff was "unable to perform any past relevant work." (*Id.* at 19) However, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including small production assembler, packing line worker, collator, and security gate guard. (*Id.* at 19-20) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 21)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ erred in relying upon the testimony of the vocational expert at step five of the sequential evaluation. (Doc. 15 at 6-12) He contends that though the ALJ limited him to occasional reaching, the production jobs identified by the vocational expert exceed the limitation. (*Id.* at 7-10) In addition, Plaintiff argues he is unable to perform the work as a security guard because it is semi-skilled and requires a reasoning level beyond his ability. (*Id.* at 11-12) On the other hand, Defendant argues that Plaintiff waived the right to appeal this issue, but even if the issue is not deemed waived, "the ALJ properly relied upon the vocational expert's … testimony" in finding that Plaintiff was able to perform work in the national economy. (Doc. 18 at 5)

### A.     **Waiver**

As an initial matter, Defendant argues Plaintiff has waived the right to appeal the step-five conclusions "by not asserting at the hearing that the ALJ failed to discharge her duty to obtain a reasonable explanation for any apparent conflict between the VE's testimony and the DOT." (Doc. 18 at 6, citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).

As Defendant observes, the Ninth Circuit held that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel*, 172 F.3d at 1115. The Court declines to apply *Meanel* here. First, Plaintiff *did* present the issue to the Appeals Council who refused to reconsider the ALJ's determination. Second, at issue here was the obligation of the ALJ to clarify the record. Notably, at step five, the Plaintiff bears no burden of proof and, of course, the ALJ did not announce the step five determination at the hearing. Thus, the Court is hard-pressed to understand how Plaintiff was aware that the step five determination would be unfavorable such that she could have notified the ALJ at the hearing of the evidentiary deficit. Moreover, as set forth below in footnote 4, the inconsistency in the VE's testimony was obvious such that the ALJ was *obligated* to determine which of the VE's statements were correct. *See Gonzalez v. Astrue*, 2012 WL 2064947 at *4 (E.D. Cal. June 7, 2012) ("the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument"). Thus, the Court concludes the issue is not waived.

**B.     The ALJ's Step Five Determination**

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*, or the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

Pursuant to SSR 00-4p[3], occupational evidence provided by a vocational expert "generally

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by

should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the ALJ asked the vocational expert to consider a hypothetical individual who was able to do "simple, repetitive tasks," and "[**o**]**ccasional reaching**, with the exception of overhead reaching which is limited." (AR at 307, emphasis added) With these limitations in mind, the vocational expert responded the individual would be able to perform light work including: small products assembler, DOT 739.687-030; packer, DOT 753.687-038; collators, DOT 653.687-010; and gate guard, DOT 372.667-030. (*Id.* at 307-08) When ALJ inquired whether this testimony was consistent with the *Dictionary of Occupational Titles*, the vocational expert responded that it does not address "sit stand options" and that with "the issue of sit stand option I'm testifying upon my – approximately 40 years actual field experience." (*Id.* at 310) Plaintiff contends there were additional conflicts with the *Dictionary of Occupational Titles* that the vocational expert failed to acknowledge, and as such the ALJ's step five determination was flawed.

---

the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

Next, Plaintiff's counsel asked the VE if the jobs identified could still be performed if the individual "was limited to **occasional reaching**, handling, fingering and feeling." (AR at 310, emphasis added) The VE opined such a limitation "would eliminate all of those production oriented jobs, the packer, the production worker and the inspector jobs."[4] (*Id.*) According to the VE, each of those jobs "require frequent use of the hands." (*Id.*) The VE believed the gate guard position "would still be on the table," because it required "only occasional use of the hands." (*Id.* at 311)

### 1. Whether there is a conflict

#### a. Plaintiff's ability to "reach"

The ALJ determined Plaintiff was able to "reach occasionally" and do "limited" overhead reaching. (AR at 17) However, as Plaintiff observes, the production jobs identified by the vocational expert require more than occasional reaching. Specifically, the *Dictionary of Occupational Titles* descriptions of small products assembler and packing line worker indicate reaching must be done "[c]onstantly," and the activity "exists 2/3 of the time or more." DOT 739.687-030; DOT 753.687-038. In addition, the description of collator indicates the reaching must be done "[f]requently," or "from 1/3 to 2/3 of the time." DOT 653.687-010. In contrast, reaching "occasionally" means the activity is done only "up to 1/3 of the day." *See* 83-10, 1983 WL 31251, at *6; DOT 372.667-030.

Significantly, courts throughout the Ninth Circuit have determined there is an apparent conflict where the ALJ limits a claimant to "occasional reaching" but a vocational expert testified a worker with the limitation was able to perform work the *Dictionary of Occupational Titles* indicated required constant or frequent reaching. For example, in *Jordan v. Astrue*, the ALJ limited the claimant to "occasional overhead reaching with the right shoulder." *Id.*, 2010 WL 2816234 at *5 (S.D. Cal. May 4, 2010). The vocational expert opined a worker would be able to perform work as a production assembler, production inspector, and garment folder—although the *Dictionary of Occupational Titles*

---

[4] The Court is at a loss to understand the VE's testimony in this regard. The ALJ imposed a limitation of "occasional reaching" when questioning the VE. In response, the VE identified the jobs noted above. Then, Plaintiff's attorney asked a hypothetical question that permitted also only "occasional reaching" along with other restrictions. In response, then the VE determined that all of the jobs would be eliminated except for the "gate guard" job. Either the VE did not apply the reaching limitation when it was imposed by ALJ or the VE didn't impose it when asked to do so by the attorney. The two responses cannot be squared.

indicated each of these positions required frequent or constant reaching. *Id.* The Southern District court concluded, "Clearly, these reaching designations conflict with a limitation of occasional reaching," and directed the ALJ to determine resolve the issue of the conflict upon remand. *Id.*, *adopted in full by* 2010 WL 2816233 (S.D. Cal., Jul. 16, 2010). Similarly, the Northern District determined there was a conflict where the expert testified "an individual limited to only 'occasional overhead' reaching" could perform the jobs described "as requiring 'frequent' reaching." *Richardson v. Astrue*, 2012 WL 5904733, at *6 (N.D. Cal. Nov. 26, 2012).

Consequently, the Court finds the VE's testimony that Plaintiff could perform the requirements of small products assembler, packing line worker, and collator conflicts with the job descriptions of the *Dictionary of Occupational Titles*, which indicate the positions require reaching on a frequent to constant basis. On the other hand, there is no conflict with the position of gate guard, which requires only occasional reaching. *See* DOT 372.667-030.

### b.     *Plaintiff's limitation to simple, routine and repetitive tasks*

In the hypothetical questions, the ALJ asked the VE to consider a person who is limited to "simple, repetitive tasks." (AR at 307) The VE indicated such a worker would be able to perform security work as a gate guard, which was "considered to be entry level or semi-skilled." (*Id.* at 307-08) Plaintiff contends he is unable to work as a gate guard, because the job requires a Reasoning Level 3[5] under the *Dictionary of Occupational Titles*, which is "incompatible" with the "limitation to simple repetitive tasks." (Doc. 15 at 11)

As Plaintiff notes, the Ninth Circuit recently determined "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Court explained that "it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form'"—as required with Reasoning Level 3—because "such instructions can be abstract." *Id.* (citation

---

[5] In the *Dictionary of Occupational Titles*, each job each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 U.S. Dist. LEXIS 69620 at *16 (E.D. Cal. June 29, 2011) (quoting *Grigsby v. Astrue*, 2010 U.S. Dist. LEXIS 5465 (C.D. Cal. Jan. 22, 2010)). The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). Reasoning Level 3 requires an individual to "apply commonsense understanding to carry out instructions furnished in a written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, App'x C(III).

omitted).  Accordingly, the Court finds there is also a conflict between the VE's testimony and the DOT job description related to Plaintiff's ability to perform the requirements of the gate guard position.

        2.        Whether the record supports the deviation from the conflict

Although the ALJ inquired whether there were conflicts between the VE's testimony and the *Dictionary of Occupational Titles*, the VE failed to acknowledge the conflicts related to the reaching requirements of small products assembler, packing line worker, and collator positions.  In addition, the VE did not address the conflict between the limitation to "simple, repetitive tasks" and the reasoning level of the gate guard position.  Even more, the ALJ failed to address the conflict in the VE's testimony that the jobs, except for the gate guard position, were both possible and impossible for someone with a reaching limitation.

Importantly, there is no indication in the record that the ALJ was aware of these conflicts.  As a result, the ALJ was unable to resolve the conflict between the two vocational resources, as is required by the Ninth Circuit.  *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation").  Because the ALJ did not address the apparent conflicts, and the vocational expert did not explain his reasoning, the record cannot support the deviation from the *Dictionary of Occupational Titles*.

**C.        Remand is Appropriate in this Matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed

where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to address the apparent conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*. Based upon the record, the Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin,* 778 F.3d at 848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Dieugenio v. Astrue*, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (holding that where the expert claimed that his testimony was consistent with information in the *Dictionary of Occupational Titles* but a review of the descriptions "reveal[ed] a conflict with respect to the jobs identified," failure to address the conflict warranted remand for further proceedings).

## CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes the ALJ erred by failing to address the apparent conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert cannot be substantial evidence to support the conclusion that Plaintiff is able to perform work in the national economy. *See Zavalin*, 778. F.3d at 846; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009) ("Only after determining whether the vocational expert has deviated from the *Dictionary of Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination.") Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

///

///

///

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Jerry Lee Murry and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 1, 2016**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE